H. S. DORF & Co., INC., A/C JOSEPH H. MEYER BROS.
v. UNITED STATES

No. 8084.—

Entry No. 782079.

(Decided February 13, 1952) ´

*Mary Rehan* for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Guy Gilbert Ribaudo*, special attorney), for the defendant.

OLIVER, Chief Judge: This appeal involves the valuation of 25 cases of white cornaline glass rods to be used in the manufacture of pearl beads.

Industria de Cristal Plastico, S. A., Coyoacan, Mexico, hereinafter called Cristal, requested Joseph H. Meyer Bros., New York, hereinafter called Meyer, to purchase for it a certain amount of these glass rods. Pursuant to such request, Meyer placed an order with the shipper, Univer Co., Paris, France, for the purchase of the rods for the account of Cristal. Because there were no direct shipping facilities between Paris and Mexico, Meyer instructed the shipper to forward the shipment to Cristal via New York in transit by the first available steamer (defendant's collective exhibit 2, page 2). The order and subsequent shipment covered 50 cases, totaling 5,000 kilos, the purchase price being 60 cents per kilo. After arrival in this country, 25 of these cases were sent to Mexico City by rail, and these 25 cases are not involved in this appeal. The remaining 25 cases were placed in a Government warehouse in bond for shipment on the first available steamer sailing for Mexico. Thereafter, Meyer retained H. S. Dorf & Co., Inc., of New York, hereinafter referred to as Dorf of New York, as its agent to transmit this second lot of 25 cases to Mexico. These instructions were complied with and Dorf of New York shipped the goods to its agent in Mexico, Dorf Mexico Co., hereinafter referred to as Dorf of Mexico.

The merchandise contained in the shipment of 25 cases sent by rail was put into production by Cristal after arrival in Mexico but was found unsatisfactory; whereupon Cristal requested Meyer to accept or "take back" the 25 cases which had been held at New York, and which were then en route to Mexico by steamer. This was agreeable

to Meyer who thereupon instructed Dorf of New York to have the 25 cases in question returned from Mexico. Dorf of New York forwarded these instructions to Dorf of Mexico. While the shipment was still in transit, Dorf of Mexico, endeavoring to comply with these instructions, made application to the Mexican Government for permission to return this merchandise to the United States on the ground that it was "unusable merchandise which had been sent to Vera Cruz in error." Subsequently, Cristal notified Meyer that although this merchandise was not completely satisfactory, it had decided to accept this shipment because of difficulty in securing suitable raw materials elsewhere, and requested Meyer to complete delivery thereof. Meyer thereupon instructed Dorf of New York to arrange for the shipment to go forward for delivery as originally intended. Dorf of New York issued instructions to Dorf of Mexico to cancel its efforts to return the shipment to Meyer and instead to revert to the original shipping orders. These later instructions were ignored by Dorf of Mexico, who gave as its reason for such noncompliance the fact that it had already requested permission from the Mexican Government to return the shipment to the United States as unusable merchandise shipped in error, which application it did not consider could be withdrawn. The Mexican Government granted the request for permission to return this shipment to the United States and the goods were transshipped to Meyer in New York. Upon return of the merchandise to this country, it was entered on the basis of the invoice price of 60 cents per kilo. The appraiser advanced the value to $0.8652 per kilo, net packed, on the theory that the shipment was an exportation from Mexico to be valued on the basis of its Mexican cost of production.

The plaintiff contends that the country of exportation for valuation purposes was France and that the entered value is the proper value. The Government contends that it was the original intention at the time of purchase to ship this merchandise to Mexico; that this intent was actually carried out; and that the goods became part of the commerce of Mexico. It accordingly maintains that the subsequent return of the merchandise to the United States constituted an exportation of the goods from Mexico; that such latter country was the country of exportation for valuation purposes; and that the appraised value represents the value of the glass rods in question. In this connection, the Government outlines the issue as follows: "The issue before the court is whether or not these goods, which were imported from France, originally intended for use in Mexico, whether there were any facts or anything to prevent this merchandise, once it arrived in Mexico, from becoming part of the goods of this foreign country."

An agent of a principal may delegate authority to his agent (subagent) and the principal of the agent is thus bound by the acts of the subagent, acting within the scope of his authority. As a general

principle, where it is essential to the proper transaction and carrying on of the business committed to the agent, or where the extent of the agent's duties makes such assistance necessary, the agent has implied authority to appoint a subagent, and, if the circumstances connected with the transaction are such that the principal must have reasonably known that duties involving discretion and ordinarily nondelegable would have to be delegated by his selected agent to a subagent, such principal is.bound by the act of such subagent in the exercise of such discretion. 2 Corpus Juris Secundum, "Agency," section 136, pages 1360–1361. This record establishes Dorf of New York to be the agent of Meyer, and Dorf of Mexico to be the agent of Dorf of New York. Accordingly, Dorf of Mexico is the subagent of Meyer. When Dorf of Mexico applied to the Mexican Government for permission to return this shipment to Meyer in New York, it did so in its capacity as subagent for Meyer, and Meyer was bound by the consequences of this action which precluded importation of this merchandise into Mexico or delivery to Cristal.

The application to return the shipment to New York was made while the goods were in transit from New York to Mexico, and when the permission was granted, it must be considered that the merchandise was diverted in transit. The continuity of the voyage was as follows: The glass rods were manufactured in France; shipped by boat to New York in transit to Mexico; and reshipped by boat from New York to Mexico. While in transit, the shipment was diverted and transshipped back to New York where it finally arrived and entry thereof was made. While it appears that the original intention was to export this merchandise from France and import it into Mexico, the fact is that the goods never were imported into Mexico and did not enter into the commerce of that country. Therefore, the shipment must be considered as an exportation from France and not from Mexico. (Reap. Circ. 26133.)

Since it has been held that this merchandise is an exportation from France, and a valuation based upon a Mexican cost of production is predicated on a wrong theory of law, and title 28, U. S. C. § 2631, requires that a determination of the value of this merchandise be made, it follows that such determination be based on its value in France.

The only evidence in this record bearing on a valuation in France for this merchandise is contained in the invoice and entry, the *bona fides* of which has not been attacked.

On the basis of the record herein, I find the proper value of the glass rods in question to be the entered value. Judgment will issue accordingly.